JPI PARTNERS, LLC, ET AL. *v.* PLANNING AND
ZONING BOARD OF THE CITY
OF MILFORD ET AL.
(SC 16603)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued January 10—officially released March 19, 2002

*Christopher J. Smith*, with whom was *Matthew P. Lundy*, for the appellants (plaintiffs).

*Matthew B. Woods*, with whom, on the brief, was *Cynthia C. Anger*, for the appellees (defendants).

*Opinion*

KATZ, J. The dispositive issue in this appeal involves the scope of judicial review in an affordable housing

land use appeal pursuant to General Statutes (Rev. to 1999) § 8-30g (c).[1] Specifically, at issue is whether the

[1] General Statutes (Rev. to 1999) § 8-30g provides: "(a) As used in this section: (1) 'Affordable housing development' means a proposed housing development (A) which is assisted housing or (B) in which not less than twenty-five per cent of the dwelling units will be conveyed by deeds containing covenants or restrictions which shall require that such dwelling units be sold or rented at, or below, prices which will preserve the units as affordable housing, as defined in section 8-39a, for persons and families whose income is less than or equal to eighty per cent of the area median income or eighty per cent of the state median income, whichever is less, for at least thirty years after the initial occupation of the proposed development; (2) 'affordable housing application' means any application made to a commission in connection with an affordable housing development by a person who proposes to develop such affordable housing; (3) 'assisted housing' means housing which is receiving, or will receive, financial assistance under any governmental program for the construction or substantial rehabilitation of low and moderate income housing, and any housing occupied by persons receiving rental assistance under chapter 319uu or Section 1437f of Title 42 of the United States Code; (4) 'commission' means a zoning commission, planning commission, planning and zoning commission, zoning board of appeals or municipal agency exercising zoning or planning authority; and (5) 'municipality' means any town, city or borough, whether consolidated or unconsolidated.

"(b) Any person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units, specified in subparagraph (B) of subdivision (1) of subsection (a) of this section, contained in the affordable housing development, may appeal such decision pursuant to the procedures of this section. Such appeal shall be filed within the time period for filing appeals as set forth in sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable, and shall be made returnable to the superior court for the judicial district where the real property which is the subject of the application is located. Affordable housing appeals shall be heard by a judge assigned by the Chief Court Administrator to hear such appeals. To the extent practicable, efforts shall be made to assign such cases to a small number of judges so that a consistent body of expertise can be developed. Appeals taken pursuant to this subsection shall be privileged cases to be heard by the court as soon after the return day as is practicable. Except as otherwise provided in this section, appeals involving an affordable housing application shall proceed in conformance with the provisions of said sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable.

"(c) Upon an appeal taken under subsection (b) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that (1) (A) the decision from which such

appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (B) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (C) such public interests clearly outweigh the need for affordable housing; and (D) such public interests cannot be protected by reasonable changes to the affordable housing development or (2) (A) the application which was the subject of the decision from which such appeal was taken would locate affordable housing in an area which is zoned for industrial use and which does not permit residential uses and (B) the development is not assisted housing, as defined in subsection (a) of this section. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it.

"(d) Following a decision by a commission to reject an affordable housing application or to approve an application with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units, the applicant may, within the period for filing an appeal of such decision, submit to the commission a proposed modification of its proposal responding to some or all of the objections or restrictions articulated by the commission, which shall be treated as an amendment to the original proposal. The filing of such a proposed modification shall stay the period for filing an appeal from the decision of the commission on the original application. The commission may hold a public hearing and shall render a decision on the proposed modification within forty-five days of the receipt of such proposed modification. The commission shall issue notice of its decision as provided by law. Failure of the commission to render a decision within said forty-five days shall constitute a rejection of the proposed modification. Within the time period for filing an appeal on the proposed modification as set forth in sections 8-8, 8-9, 8-28, 8-30, or 8-30a, as applicable, the applicant may appeal the commission's decision on the original application and the proposed modification in the manner set forth in this section. Nothing in this subsection shall be construed to limit the right of an applicant to appeal the original decision of the commission in the manner set forth in this section without submitting a proposed modification or to limit the issues which may be raised in any appeal under this section.

"(e) Nothing in this section shall be deemed to preclude any right of appeal under the provisions of sections 8-8, 8-9, 8-28, 8-30, or 8-30a.

"(f) Notwithstanding the provisions of subsections (a) to (e), inclusive, of this section, the affordable housing appeals procedure established under this section shall not be available if the real property which is the subject of the application is located in a municipality in which at least ten per cent of all dwelling units in the municipality are (1) assisted housing or (2) currently financed by Connecticut Housing Finance Authority mortgages or (3) subject to deeds containing covenants or restrictions which require that such dwelling units be sold or rented at, or below, prices which will preserve

named defendant,[2] the planning and zoning board of the city of Milford (board), was required to state explicitly during the administrative proceedings that its denial of the affordable housing applications filed by the plaintiffs[3] had been predicated on the board's determination

the units as affordable housing, as defined in section 8-39a, for persons and families whose income is less than or equal to eighty per cent of the area median income. The Commissioner of Economic and Community Development shall, pursuant to regulations adopted under the provisions of chapter 54, promulgate a list of municipalities which satisfy the criteria contained in this subsection and shall update such list not less than annually.

"(g) Notwithstanding the provisions of subsections (a) to (e), inclusive, of this section, the affordable housing appeals procedure shall not be applicable to an affordable housing application filed with a commission during the one-year period after a certification of affordable housing project completion issued by the Commissioner of Economic and Community Development is published in the Connecticut Law Journal. The Commissioner of Economic and Community Development shall issue a certification of affordable housing project completion for the purposes of this subsection upon finding that (1) the municipality has completed an initial eligible housing development or developments pursuant to section 8-336f or sections 8-386 and 8-387 which create affordable dwelling units equal to at least one per cent of all dwelling units in the municipality and (2) the municipality is actively involved in the Connecticut housing partnership program or the regional fair housing compact pilot program under said sections. The affordable housing appeals procedure shall be applicable to affordable housing applications filed with a commission after such one-year period, except as otherwise provided in subsection (f) of this section."

Since 1999, the time of the administrative proceedings at issue in this case, § 8-30g has been amended substantially. See Public Acts 2000, No. 00-206, § 1 (P.A. 00-206). See footnote 13 of this opinion for the current revision of § 8-30g (c).

[2] Also named as defendants in this case are Alan H. Jepson, clerk of the city of Milford, John Wicko, the chairperson of the board, and Cynthia Vere, clerk of the board.

[3] The plaintiffs in this case are JPI Partners, LLC (JPI Partners), JPI Apartment Development, L.P. (JPI Development), and the Hudak Family Nominee Trust, through its trustee John F. Hudak (Hudak).

The applications that were submitted to the board were brought in the name of JPI Partners and Hudak, identifying JPI Partners as the applicant and listing Hudak's name as the property owner. See footnote 4 of this opinion. While JPI Development, the contract purchaser of the property, was not expressly listed on the applications, it had authorized JPI Partners to act as agent on its behalf in the application process, as evidenced by a "Confirmation of Authorization Agreement" the parties had executed.

that the exclusive industrial zone exemption in § 8-30g
(c) applied. The plaintiffs appealed the board's denial
of their applications to the trial court, which dismissed
their appeal, and the plaintiffs, on the granting of certifi-
cation, appealed to the Appellate Court. We transferred
the appeal to this court pursuant to Practice Book § 65-
1 and General Statutes § 51-199 (c). We conclude that
the board was required to make an express collective
statement, concurrent with its decision denying the
applications, that its denial was predicated on the indus-
trial zone exemption. We further conclude that, because
the board invoked the exemption for the first time on
appeal to the trial court, the trial court improperly dis-
missed the plaintiffs' appeal.

The record discloses the following undisputed perti-
nent facts. In June, 1999, the plaintiffs submitted to the
board six related zoning applications,[4] which together

Accordingly, for purposes of clarity, we refer to the applications as having
been filed by all of the plaintiffs.

[4] The trial court identified the various applications as follows:

"1. A petition filed by JPI Partners and Hudak to amend the zoning regula-
tions to create a new zoning district entitled 'Open Space Affordable Housing
Development—Multi-Family (OSAHD-MF)';

"2. A petition brought in the name of JPI Partners and Hudak to change
the zone of approximately 17 acres of the property from R-18 residential
usage to the proposed OSAHD-MF zone. The completed petition for change
of zone contained the name and signature of John J. Englert in the designated
place for applicant's signature, the mailing address for JPI Partners in the
space for applicant's mailing address, and Hudak's signature in the space
designated for property's owner's signature.

"3. A petition brought in the name of JPI Partners and Hudak to change
the zone of the remainder of the property from its current designation as a
light industrial zone, L1-30, to the proposed OSAHD-MF zone. The completed
petition for change of zone contained the name and signature of John J.
Englert in the designated place for applicant's signature, the mailing address
for JPI Partners in the space for applicant's mailing address, and Hudak's
signature in the space designated for the property owner's signature.

"4. A petition brought in the name of JPI Partners and Hudak for a special
permit to allow the construction of 248 multi-family dwelling units with a
model unit, rental office, and pool/clubhouse on the property pursuant to
the proposed OSAHD-MF zone. The petition identified JPI Partners as the
applicant. John J. Englert signed the petition in the designated place for

proposed the construction of a 248 unit assisted living residential complex that included affordable housing on 22.6 acres on Woodmont Road in Milford. The subject property is bisected by two zoning districts. The front portion, comprising approximately 5.6 acres, is located in an area designated by Milford's zoning regulations as a light industrial zoning district. The rear portion of the subject property, comprising approximately seventeen acres, is located in an area designated by the regulations as a residential zoning district.

Thereafter, on September 21 and 28, 1999, the board commenced public hearings to address the plaintiffs' applications. At the hearings,[5] the plaintiffs submitted a comprehensive packet that included copies of § 8-

applicant's signature. The petition listed Hudak in the space for 'property owner's name' and Hudak signed it in the place assigned for the 'property owner's signature.'

"5. An application brought in the name of JPI Partners and Hudak for site plan review and approval of the site. The application identified JPI Partners as the applicant. John J. Englert signed the application in the designated place for applicant's signature. The application listed Hudak in the space for 'property owner's name' and Hudak signed it in the place assigned for the 'property owner's signature.'

"6. An application for coastal site plan approval of the project. The application identified JPI Partners and Hudak as the applicants and Hudak as owner of the property."

[5] Prior to the hearings on the applications, the plaintiffs had received approval from all other necessary regulatory bodies: the Milford inland wetlands agency had approved all regulated activities associated with the proposed site development; the Milford sewer commission had approved the proposed site development; the Milford fire department found the site development plans acceptable; the Milford director of public works found the site development plans acceptable; the Milford police department's traffic division found the plans acceptable subject to the addition of an off-site traffic signal north of the subject property; the state traffic commission found the site acceptable subject to minor recommendations, all of which the plaintiffs had incorporated into the plans; the department of environmental protection found the site plan consistent with the applicable coastal area management policies and standards; and the Milford conservation commission was satisfied that its concerns had been addressed adequately by the open space component of the plaintiffs' proposal—10.4 acres were dedicated to open space, only three of which constituted wetlands/watercourses.

30g, including the industrial zone exemption contained therein; see footnote 1 of this opinion; and Milford's zoning regulations that provide for a residential use exception to limited industrial zones.[6] In their presentation to the board, the plaintiffs raised the issue of the § 8-30g (c) exclusive industrial zone exemption, which contravened the usual presumption in favor of affordable housing land use applications, and explained from their perspective why it did not apply to their applications.[7] At no time during the hearing did the

---

[6] The zoning regulations of the city of Milford provide in relevant part: "3.14.1 Permitted Uses: Subject to all other applicable provisions and limitations of these Regulations the Board shall permit the following buildings and uses in Limited Industrial Districts, subject to Site Plan Approval in accordance with ARTICLE VII, and Section 3.14.1.12. . . .

"3.14.1.11 Assisted living residential facilities, notwithstanding Section 3.14.5.1, and subject to the following conditions: (Effective 11/1/96)

"(1) The facility shall be located on a lot of not less than four (4) acres.

"(2) There shall be a minimum of 1,500 square feet of land area for each person accommodated or resident of the premises.

"(3) Notwithstanding Section 3.9.3.4, parking in assisted living residential facilities shall be a minimum of one (1) per every three (3) dwelling units and one (1) for every employee on the largest shift.

"(4) Assisted living residential facilities shall have community spaces consisting of not less than 75 square feet for each dwelling unit, which shall consist of dining rooms, kitchen facilities, medical or clinical care rooms, meeting or activity rooms, recreation rooms, administrative offices for the facility, and similar uses in support of those living in the facility.

"(5) The facility shall have the required frontage on an Arterial or Major Collector street as shown on the City Development Plan.

\* \* \*

"3.14.5 Prohibited Uses: The following uses shall be expressly prohibited.

"3.14.5.1 No dwellings or dwelling units shall be permitted; except for accommodations for watchmen, caretakers or custodians in conjunction with a principal use on the same premises."

[7] Specifically, the plaintiffs noted the following: "[T]he property must be located in a residential zoning district and/or an industrial zoning district that permits a residential, excuse me, residential use and any specific affordable housing site development proposal shall be subject to the following standards. Now what's important there, I just would like to point out, because I have heard or I saw a memo from your City Attorney, I'm not quite sure where I've heard this issue brought up by some individual neighbors, and with regard to an industrial zoning district, I would like to just quickly refer you back to Exhibit K in my package and if you would go to the second

board, its members, or its professional staff make comments or ask questions regarding the application of the industrial zone exemption, or in any way challenge the plaintiffs' contention that the exemption did not apply to their applications.

At the hearing, the plaintiffs also presented several witnesses who addressed specifics of the development, including traffic considerations, safety concerns, tax revenue issues, impact on Milford's industrial zoned property inventory and issues of density and consistency with Milford's comprehensive plan. This testimony was countered by opposition to the assisted living development voiced by neighbors and local politicians. On November 3, 1999, after some of the board members stated their opposition to the applications because the proposed site development would adversely impact Milford's tax base and the proposed site development would generate traffic that would adversely impact public safety, the board denied the plaintiffs' applications.

Thereafter, the plaintiffs appealed from the board's denial to the trial court, contending that the reasons given by the board did not satisfy the requirements for denying affordable housing applications pursuant to § 8-30g (c). Specifically, they claimed that there was insufficient evidence in the record to support the rea-

page please, which is the second page of § 8-30g, and right in the middle we have subparagraph c. Now if you go about half way down paragraph c or two thirds of the way, you'll see a number 2 and an A, both in parens; and what this says is that certain applications shall not be subject to the act, and what this, and I would just ask you to read it, the applicant, with me, the application, which was the subject of the decision from which such appeal was taken, in other words this is where it will not, it is not applicable, would locate affordable housing in an area which is zoned for industrial use and which does not permit residential uses and as we'll hear in a moment, the front portion is indeed zoned Limited Industrial 30 and as indicated in your regulations for the [Limited Industrial 30] zone, a residential assisted living use is a permitted use in that zone so it does not fall, this application does not fall within that exemption of the statutes."

sons given, that the board had not established that the reasons clearly outweighed the need for affordable housing in Milford, and that the board had not established that any legitimate interests embodied in those reasons could not be protected by reasonable modification of the plaintiffs' proposal. The board responded by raising jurisdictional and substantive grounds for affirming its decision. Specifically, the board contended that JPI Partners was not aggrieved by the board's decision because it had no ownership interest in the property and that JPI Development lacked standing to appeal under § 8-30g because it had not joined in the applications. The board also asserted, for the first time, that the disclosure requirements of § 8-30g (c) (1) did not apply in the present case because the applications placed affordable housing in an industrial zone that did not permit residential uses.

The plaintiffs countered that the court should not consider the industrial zone exemption because it had not been raised by the board at the administrative level. Specifically, the plaintiffs argued that, by asserting a new basis for its denial of the applications for the first time on appeal, the board effectively denied the plaintiffs' right under § 8-30g (d) to submit, within the statutory appeal period, a modified plan locating all site development on the residentially zoned area of the subject property. See footnote 1 of this opinion. In connection with this claim, the plaintiffs requested permission from the trial court to supplement the record with such a modified site plan. The plaintiffs further argued that, even if the court properly could consider this new basis for the board's denial of the applications, the industrial zone exemption did not apply because the Milford zoning regulations allow residential uses in the type of light industrial zone at issue. See footnote 6 of this opinion.

In addressing the board's jurisdictional claims, the trial court examined the status of each of the plaintiffs.

The trial court first determined that Hudak, while aggrieved, was "not an applicant who proposed to develop affordable housing" and thus lacked standing to bring an appeal under § 8-30g. The court further determined however, that the other two plaintiffs—JPI Partners, as the agent for JPI Development, and JPI Development itself, as the proposed developer—did have standing to appeal. With regard to the substantive claims of the plaintiffs' appeal, the trial court next determined that the board properly could raise, for the first time on appeal, the industrial zone exemption in subsection (c) (2) of § 8-30g as a reason for its decision denying the applications because the requirement in subsection (c) (1), that a municipal land use board state its reasons on the record for denying an affordable housing application, was inapplicable when the (c) (2) exemption was at issue. In reaching that conclusion, the trial court considered our decision in *Christian Activities Council, Congregational* v. *Town Council*, 249 Conn. 566, 735 A.2d 231 (1999), and concluded that our determination in that case, namely, that the zoning commission has the burden to state collectively its reason when denying an affordable housing application, was inapplicable because: (1) that case did not expressly address the industrial zoning exemption; and (2) the reasons we articulated therein were not relevant to this exemption. Moreover, the trial court determined that, although § 8-30g recently had been amended to impose the same collective statement requirement when the board's decision was predicated on the industrial zoning exemption,[8] the statute in effect at the time of the board's decision did not impose such a requirement. Therefore, the trial court considered itself free to review the

---

[8] The trial court observed that, "[i]n the 2000 legislative session, the General Assembly modified this portion of the statute to require the collective statement of reasons for rejecting an affordable housing application on the industrial zone exception." See footnote 13 of this opinion for the current revision of the statutory provision at issue in this case.

board's reliance on the industrial zone exemption. The trial court thereafter determined that the board's reliance on the exemption was proper because, pursuant to the Milford zoning regulations, the affordable housing project proposed by the plaintiffs did not fall within either of the two exceptions to the industrial zone exemption, namely, the proposed housing was not "assisted housing" within the meaning of the statute; see General Statutes § 8-30g (3) (defining assisted housing); and, pursuant to the Milford zoning regulations, the industrial zone in question did not permit residential uses.

Finally, the court considered the plaintiffs' motion to supplement the record to allow them to submit a modified site development plan that would locate the entire housing development within the residentially zoned portion of the property. The trial court recognized that the board's tardy invocation of the industrial zone exemption had in fact prevented the plaintiffs from including a revised site development in the record for the trial court to review. It nevertheless concluded that, because the exemption was predicated on the concern that affordable housing developments in industrial zones deprived towns of much needed tax revenues, and because the plaintiffs knew of the exemption and were aware of the residential use issue as to the industrial zone, they could not claim that they were prejudiced unfairly by the board's conduct. Accordingly, the trial court exercised its discretion and denied the plaintiffs' request to supplement the record. The trial court thereafter dismissed the plaintiffs' appeal. This appeal followed.

On appeal, the plaintiffs claim that the trial court improperly: (1) determined that the board was not required to state its reasons for denying the plaintiffs' affordable housing application at the time it rendered its decision; (2) concluded that an assisted living resi-

dential facility, which, pursuant to the Milford zoning regulations, is permitted in an industrial use zone, is not a residential use that falls within the § 8-30g (c) exception to the industrial zone exemption; (3) refused their request to supplement the record to allow them to introduce a modified site development plan that would have located the entire housing development on the portion of the property that is residentially zoned;[9] and (4) determined that Hudak did not have standing to bring the appeal.[10] We agree with the plaintiffs that the trial court improperly concluded that the board was not obligated, pursuant to § 8-30g (c) (2), to state its reasons on the record, concurrent with its decision, for denying an affordable housing application.

The plaintiffs' claim raises issues of statutory construction, over which our review is plenary. See, e.g., *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 26, 717 A.2d 77 (1998). Our resolution of this claim is governed by well established principles. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 587 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative

[9] Although the plaintiffs attempted to introduce a modified site plan before the trial court, the board had only one plan before it for consideration. Because of the board's late disclosure of its reliance on the industrial zone exemption, the plaintiffs reasonably did not perceive the need to avail themselves of their right under § 8-30g (d) to submit within the statutory appeal period a modified plan locating all site development on the residentially zoned area of the subject property.

[10] The plaintiffs withdrew at oral argument before this court the jurisdictional issue of Hudak's standing because JPI Development, the contract purchaser of the property, has standing to bring the appeal.

history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Bender* v. *Bender*, 258 Conn. 733, 741, 785 A.2d 197 (2001).

In resolving this question we do not write on a clean slate. In *Christian Activities Council, Congregational* v. *Town Council,* supra, 249 Conn. 575–77, we outlined the differences that this court had identified previously between an affordable housing land use appeal brought pursuant to § 8-30g and a traditional zoning appeal. "First, an appeal under § 8-30g (b) may be filed only by an applicant for an affordable housing development whose application was denied or [was] approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units . . . .

"Second, the scope of judicial review under § 8-30g (c) requires the town, not the applicant, to marshal the evidence supporting its decision and to persuade the court that there is sufficient evidence in the record to support the town's decision and the reasons given for that decision. By contrast, in a traditional zoning appeal, the scope of review requires the appealing aggrieved party to marshal the evidence in the record, and to establish that the decision was not reasonably supported by the record. . . .

"Third, if a town denies an affordable housing land use application, *it must state its reasons on the record, and that statement must take the form of a formal, official, collective statement of reasons for its actions.* . . . By contrast, in a traditional zoning appeal, if a zoning agency has failed to give such reasons, the court is obligated to search the entire record to find a basis for

the [agency's] decision." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 575–76.

As we stated in *Christian Activities Council, Congregational*: "We reach this conclusion based on the text and the purpose of the statute. The text requires that the town establish that sufficient record evidence supports the decision from which such appeal is taken and the reasons cited for such decision . . . . General Statutes § 8-30g (c) (1) (A). Thus, textually the statute contemplates reasons that are cited by the town. This strongly suggests that such reasons be cited by the zoning agency at the time it took its formal vote on the application, rather than reasons that later might be culled from the record, which would include, as in a traditional zoning appeal, the record of the entire span of hearings that preceded the vote. Furthermore, the statute requires that the town establish that: its decision [was] necessary to protect substantial public interests in health, safety, or other matters which the [agency] may legally consider; General Statutes § 8-30g (c) (1) (B); those interests clearly outweigh the need for affordable housing; General Statutes § 8-30g (c) (1) (C); and those public interests cannot be protected by reasonable changes to the plan. General Statutes § 8-30g (c) (1) (D). These requirements strongly suggest that the town be obligated, when it renders its decision, to identify those specific public interests that it seeks to protect by that decision, so that the court in reviewing that decision will have a clear basis on which to do so. Furthermore, the key purpose of § 8-30g is to encourage and facilitate the much needed development of affordable housing throughout the state. *West Hartford Interfaith Coalition, Inc.* v. *Town Council,* [228 Conn. 498, 511, 636 A.2d 1342 (1994)]. Requiring the town to state its reasons on the record when it denies an affordable housing land use application will further that purpose because it will help guard against possibly pre-

textual denials of such applications. We therefore read the statute, consistent with its text and purpose, to require the town to do so." (Internal quotation marks omitted.) *Christian Activities Council, Congregational* v. *Town Council,* supra, 249 Conn. 577–78.

Thereafter, in *Quarry Knoll II Corp.* v. *Planning & Zoning Commission,* 256 Conn. 674, 719, 780 A.2d 1 (2001), we examined a public act that was enacted during the pendency of the appeal in that case, namely, P.A. 00-206, § 1; see footnote 1 of this opinion; which amended § 8-30g (c) (1),[11] to determine "whether [the] textual change to the statute affects our scope of review in determining whether the commission ha[d] met its burden under § 8-30g (c) (1) (B), (C) and (D), and whether the amendment to § 8-30g (c) ha[d] retroactive application." *Quarry Knoll II Corp.* v. *Planning & Zoning Commission,* supra, 719. We concluded therein that the amendment was intended to clarify the original intent of that statute, namely, that there are two standards of judicial review under § 8-30g (c) (1) (A) through (D), and, therefore, that it had retroactive application.[12] Id., 722, 726.

---

[11] In *Quarry Knoll II Corp.* v. *Planning & Zoning Commission,* supra, 256 Conn. 678–80 n.3, the 1997 revision of § 8-30g was the governing statute. That revision and the 1999 revision, which was at issue in *Christian Activities Council, Congregational* v. *Town Council,* supra, 249 Conn. 568–71 n.2, were nearly identical.

[12] Specifically, in *Quarry Knoll II Corp.* v. *Planning & Zoning Commission,* supra, 256 Conn. 727, we held that "[u]nder § 8-30g (c) (1) (A), [a] court must determine . . . whether the commission has shown that its decision is supported by 'sufficient evidence' in the record." We held further that, under subparagraphs (B), (C) and (D) of § 8-30g (c) (1), the court is required to conduct a plenary review of the record in order to make an "independent determination" of "whether the commission has sustained its burden of proof, namely that . . . its decision is based upon the protection of some substantial public interest . . . the public interest clearly outweighs the need for affordable housing . . . and there are no modifications that reasonably can be made to the application that would permit the application to be granted . . . ." Id.

Although we did not have occasion in that case to examine whether the requirements of then (c) (1) were intended to apply as well to then subsection (c) (2), we note that the statutory language upon which *Christian Activities Council, Congregational* relied for imposing these requirements, although now prefatory, was not changed substantially.[13] Moreover, as we noted in *Quarry Knoll II Corp.* v. *Planning & Zoning Commission,* supra, 256 Conn. 729, following our review of the legislative history of the amendments to § 8-30g, that portion of our decision in *Christian Activities Council, Congregational* that required the town to state its reasons on the record when denying an application was unaffected by the amendment.

Indeed, we find no principled reason for distinguishing between what were then subdivisions (1) and (2) of § 8-30g (c) with regard to the board's obligation. The statute contemplates that the zoning commission will have made certain factual determinations in the zoning

---

[13] It is undisputed that, as amended, § 8-30g now requires a zoning commission to state when its denial is predicated on the industrial zone exemption. Subsection (c) of the earlier revisions of the statute is now codified at subsection (g), which provides: "Upon an appeal taken under subsection (f) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. The commission shall also have the burden to prove, based upon the evidence in the record compiled before such commission, that (1) (A) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (B) such public interests clearly outweigh the need for affordable housing; and (C) such public interests cannot be protected by reasonable changes to the affordable housing development, or (2) (A) the application which was the subject of the decision from which such appeal was taken would locate affordable housing in an area which is zoned for industrial use and which does not permit residential uses, and (B) the development is not assisted housing, as defined in subsection (a) of this section. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it."

proceedings, and the court is obligated to review those factual determinations pursuant to the scope of review set forth in the statute. The requirement that the commission make a collective statement of its reasons on the record when it denies an affordable housing land use application equally furthers the goals of the statute when the application falls either under then subdivision (1) or (2) of § 8-30g (c).

Furthermore, we agree with the plaintiffs that the trial court's reading of § 8-30g (c) denies applicants the opportunity to resubmit, within the statutory appeal period, a modified proposal pursuant to § 8-30g (d). See footnote 1 of this opinion. The resubmittal procedure, unique to affordable housing applications, both supports the purpose of the statute to encourage and facilitate the development of much needed affordable housing and eliminates wasteful litigation and delay of such development by permitting an applicant effectively to address reasons for a denial at the administrative level. We therefore read § 8-30g, consistent with its text and purpose, to require the board to make a collective statement of its reasons on the record when it denies an affordable housing land use application. Accordingly, the trial court's determination that the board did not have to disclose the industrial zone exemption as a reason for denying the applications and its conclusion that such reason could be raised by the board for the first time on appeal were improper.

As the trial court itself noted, "but for the location of a portion of the affordable housing complex in an industrial zone not permitting residential uses, the court would have had no option but to sustain the appeals." Because we have determined that the trial court improperly determined that the board could invoke the exemption for the first time on appeal, we need not reach the plaintiffs' other claims.

The judgment is reversed and the case is remanded with direction to sustain the appeal.

In this opinion the other justices concurred.