DANA EVANS ET AL. *v.* PLAN AND ZONING COMMISSION OF THE TOWN OF GLASTONBURY ET AL.
(AC 22203)

Lavery, C. J., and West and Peters, Js.

Argued September 10—officially released November 19, 2002

*Derek V. Oatis*, for the appellants (plaintiffs).

*Barbara A. Frederick*, for the appellee (defendant Testa Development Associates, LLC).

*Duncan J. Forsyth*, for the appellee (named defendant).

## Opinion

LAVERY, C. J. The plaintiffs, Dana Evans and David Evans, appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant plan and zoning commission of the town of Glastonbury (commission). The commission had approved the applications of the defendant Testa Development Associates,

LLC (Testa), for subdivision approval and a rear lot special permit.[1] On appeal, the plaintiffs claim, as they did before the trial court, that the defendants failed to comply with applicable regulations and General Statutes § 22a-19. We conclude that the court properly dismissed the plaintiffs' appeal, and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiffs' appeal. On or about May 1, 2000, Testa filed applications for subdivision-resubdivision approval and a rear lot special permit. The applications were signed by Testa as the "applicant" and by the defendants David M. Russell and Alvah A. Russell, Jr., as the "owners" of the property. On June 6, 2000, the plaintiffs filed petitions to intervene pursuant to § 22a-19 (a). On July 18, 2000, the commission approved Testa's subdivision and special permit applications. The plaintiffs appealed to the trial court, claiming that (1) the commission improperly failed to require the defendants to comply with § 5.6 (c) of the Glastonbury subdivision and resubdivision regulations,[2] (2) the commission improperly failed to require the defendants to comply with § 6.8.3 of the Glastonbury building zone regulations,[3] and (3) the proposed subdi-

---

[1] The defendants at trial were the plan and zoning commission of the town of Glastonbury, Testa Development Associates, LLC, and property owners Lucy May Russell, David M. Russell and Alvah A. Russell. The commission and Testa are the defendants on appeal.

[2] Section 5.6 (c) of the Glastonbury subdivision and resubdivision regulations provides: "Where development covers only a portion of the land owned by the Applicant, the Applicant shall submit a non-binding Plan ([one inch equals 100 feet scale] Class 'D' Survey) indicating potential development of the entire tract in relation to the tract involved in the current application. Any portion not included in the subdivision shall be labeled 'other land of "owner" not approved for building purposes.'"

[3] Section 6.8.3 of the Glastonbury building zone regulations provides: "A Section 6.8 Special Permit shall not be granted for any rear lot that is created by the resubdivision of any numbered and approved lot in any subdivision approved after the effective date of this ordinance (3/09/87). Furthermore, any driveway that has the potential to, or is anticipated to access 'other land of', as defined under Section 6.8 (c) of the Glastonbury Subdivision

vision causes an unreasonable impairment to wildlife, and the commission failed to consider any alternatives to the proposal as required by § 22a-19.[4] The court rejected those claims and dismissed the plaintiffs' appeal, finding that the regulations did not apply to Testa because it was the applicant and not the owner of the subject property. The court further found that substantial evidence existed that the proposed plan would not cause unreasonable impairment in natural resources of the state. We granted the plaintiffs' petition for certification to appeal and now conclude that the court properly dismissed the plaintiffs' appeal.

I

The plaintiff Dana Evans[5] first argues that the commission improperly approved Testa's application

and Resubdivision Regulations, shall be labeled 'possible future access drive to undeveloped land' on final development plans. No rear lot shall be approved without compliance with this paragraph."

[4] General Statutes § 22a-19 provides: "(a) In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.

"(b) In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare."

[5] The court found that the plaintiff Dana Evans had proven aggrievement as an abutting landowner. See General Statutes § 8-8 (a) (1). The court also found that the plaintiff Dana Evans had standing to raise environmental claims pursuant to § 22a-19. The plaintiff David Evans' standing was limited to raising environmental claims pursuant to § 22a-19. Because David Evans' standing was limited to asserting claims pursuant to § 22a-19, the claim

because Testa had not submitted information required by § 5.6 (c) of the Glastonbury subdivision and resubdivision regulations. Testa counters that the requirements of § 5.6 (c) are not applicable to the application at issue.

Before reaching the merits of the plaintiff Dana Evans' claim, we note that she did not raise that issue before the commission. The court, citing *Dragan* v. *Connecticut Medical Examining Board*, 223 Conn. 618, 632, 613 A.2d 739 (1992), held that her failure to raise her claim before the commission barred it from reviewing the claim on appeal. The plaintiff Dana Evans challenges that decision.

"A party to an administrative proceeding cannot be allowed to participate fully at hearings and then, on appeal, raise claims that were not asserted before the [commission]." Id.; see *Dram Associates* v. *Planning & Zoning Commission*, 21 Conn. App. 538, 544, 574 A.2d 1317, cert. denied, 215 Conn. 817, 576 A.2d 544 (1990). A thorough review of the record in the present case reveals that the plaintiff Dana Evans failed to challenge § 5.6 of the Glastonbury subdivision and resubdivision regulations before the commission. The court properly held, therefore, that she could not raise that claim on appeal. The court, however, then addressed the merits of that claim. Therefore, we will review it on the merits.

Before commencing our review of the plaintiff Dana Evans' claim, we set forth the general principles that govern our review of the regulations at issue. When interpreting an ordinance, we recognize that "[a] local ordinance is a municipal legislative enactment and the same canons of construction which we use in interpreting statutes are applicable to ordinances. . . . A court must interpret a statute as written . . . and it is to be

regarding the defendants' compliance with § 5.6 (c) of the subdivision and resubdivision regulations applies only to the plaintiff Dana Evans.

considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. . . . A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance. . . . The words [employed] are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms. . . . The language of the ordinance is construed so that no clause or provision is considered superfluous, void or insignificant. . . . Common sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body." (Citations omitted; internal quotation marks omitted.) *Doyen* v. *Zoning Board of Appeals*, 67 Conn. App. 597, 604–605, 789 A.2d 478, cert. denied, 260 Conn. 901, 793 A.2d 1088 (2002).

With the foregoing principles in mind, we consider the plaintiff Dana Evans' claim regarding § 5.6 (c), which provides in its entirety: "Where development covers only a portion of the land owned by the Applicant, the Applicant shall submit a non-binding Plan . . . indicating potential development of the entire tract in relation to the tract involved in the current application. Any portion not included in the subdivision shall be labeled 'other land of "owner" not approved for building purposes.' "

The issue is essentially whether Testa, the applicant, was required to submit the nonbinding plan required by § 5.6 (c). It is undisputed that at the time that Testa filed the subdivision application and rear lot special permit application, it did not own the property at issue or any adjacent property. Rather, it had an option to purchase the property from the owners, the defendants Lucy May Russell, David Russell and Alvah Russell, Jr.[6]

---

[6] It is undisputed that following the commission's approval of the applications, Testa purchased the property from the Russells. Testa contends that

The plaintiff Dana Evans argues that the terms "applicant" and "owner" are interchangeable and, therefore, the commission should have required Testa to submit a nonbinding plan for the future use of the "other lands" owned by the Russells that were adjacent to the subject land. She contends that Testa's failure to submit the necessary information as required by the regulation was fatal, and, further, that the commission had no discretion to waive the requirement and to approve the application. In contrast, Testa maintains that there is a distinction between the terms "applicant" and "owner" of the subject land and that by its express terms, § 5.6 (c) applies only to "other lands" belonging to the "applicant." Because it did not own or have any interest in land adjacent to the subject property, Testa asserts, it was not subject to the regulation. We agree with Testa.

Initially, we note that § 2.1 of the subdivision and resubdivision regulations recognizes a distinction between owners and applicants. That section defines "applicant" to mean "the owner of record or any person, firm, corporation, partnership, association or appointed agent having interest in a parcel of land with written consent by the owner, who applies to the Commission for approval of subdivision or resubdivision of said land." The regulations, therefore, do not use the terms "applicant" and "owner" interchangeably. Rather, the regulations provide that an applicant may be someone other than the owner.

We further note that § 5.6 (c) specifically refers to the "land owned by the [a]pplicant." The court found that in the present case, the applicant, Testa, had filed

this action renders the plaintiffs' claims moot with regard to § 5.6 (c) of the subdivision and resubdivision regulations, and § 6.8.3 of the building zone regulations. See part II. We will, however, consider this case in the manner in which it was presented to the commission and the court and consider those arguments on the merits.

the applications for subdivision and rear lot special permits with the consent of the owners, the Russells. Because it was undisputed that Testa did not own the subject property or any " 'other land . . . not approved for building purposes,' " the court properly found that § 5.6 (c) did not require Testa or the commission to do anything.

The plaintiff Dana Evans argues, however, that to recognize a distinction between an owner and an applicant, where there exists consent and a clear commonality of interest in the application and approval by the commission, would be to advance form over substance. She contends that our courts have rejected such a technical distinction between an owner and applicant. She concedes, however, that the cases on which she relies primarily involve issues of standing and the desire of an applicant, who is not the owner of record, to challenge an adverse decision of a zoning commission. See, e.g., *Richards* v. *Planning & Zoning Commission*, 170 Conn. 318, 321–24, 365 A.2d 1130 (1976); *Michel* v. *Planning & Zoning Commission*, 28 Conn. App. 314, 324–25, 612 A.2d 778, cert. denied, 223 Conn. 923, 614 A.2d 824 (1992). The present case, however, does not involve such an issue. The question, rather, is whether Testa was required to submit a nonbinding plan with regard to property in which Testa undisputedly had no ownership interest. On the basis of our review of the record, and considering the express language of § 5.6 (c), we conclude, as did the trial court, that Testa was not required to submit the nonbinding plan referred to in that section.[7]

---

[7] In so holding, we note the argument by the plaintiff Dana Evans that subdivision and resubdivision regulation 6.6, entitled "Other Lands of Applicant," defines the land and the identity of the actual owner broadly, and in relation to the clear interests and relationship of the "owner" and "applicant." That section provides: "In determining the total open space to be dedicated, the Commission may, if the Applicant so requests, consider not only the tract or tracts to be subdivided immediately but also any other adjacent tract owned, controlled or under agreement to buy or optioned by the

## II

The plaintiff Dana Evans[8] next argues that the defendants failed to comply with building zone regulation § 6.8.3.[9] She argues, as she did before the trial court, that Testa's final plans reveal a driveway that provides access to both the subject property and to other, undeveloped land of the Russells, and that this driveway was not labeled in accordance with § 6.8.3. She again contends that Testa's failure to submit the necessary information was fatal to its application, and, further, that the commission had no discretion to waive that requirement and to approve the application. We disagree.

Section 6.8.3, entitled "Resubdivision Limitation," provides in relevant part that "any driveway that has the potential to, or is anticipated to access 'other land of', as defined under Section 6.8 (c) of the Glastonbury Subdivision and Resubdivision Regulations, shall be labeled 'possible future access drive to undeveloped land' on the final development plans. No rear lot shall be approved without compliance with this paragraph."

As the court correctly pointed out, § 6.8.3 refers to a definition of "other land of" contained in § 6.8 (c) of the subdivision and resubdivision regulations. Section 6.8 (c) of the subdivision and resubdivision regulations,

Applicant or corporation controlled or owned by the Applicant." Thus, "other lands of applicant" essentially refers to adjacent tracts owned or controlled by the applicant or a corporation owned or controlled by the applicant. As it is undisputed that Testa did not own or have any interest in the adjacent property owned by the Russells, § 6.6 would be applicable if the Russells were a "corporation controlled or owned" by Testa. No such evidence was presented before the commission.

[8] See footnote 5.

[9] As with the first issue on appeal, the plaintiff Dana Evans failed to raise the challenge to § 6.8.3 before the commission. The court properly held, therefore, that her failure to preserve the issue precludes judicial review of the issue. Because the court nonetheless considered the merits of the claim, we likewise will consider its merits.

however, does not exist. The definition of "other land of," as stated in § 6.8.3, is, therefore, unclear. The plaintiff Dana Evans claims that the Russells' undeveloped land meets the definition of "other land of" referred to in § 6.8.3, and, therefore, Testa was required to label its proposed driveway as " 'possible future access drive to undeveloped land' " in its subdivision plan. Testa counters that its land and not the Russells' land falls within the purview of the "other land of" referred to in § 6.8.3. We agree with Testa.

The concept of "other land of" is addressed in §§ 5.6 (c) and 6.6 of the Glastonbury subdivision and resubdivision regulations. Read as a whole, therefore, it is likely that the intended reference in § 6.8.3 of the building zone regulations to "other land of" was either to § 5.6 (c) or to § 6.6. As discussed in part I, those sections apply to the other land of the applicant, in this case, Testa, and not to the other land of the owner, in this case the Russells. The court, therefore, properly concluded that the term "other land of" referred to lands owned by Testa and not the Russells. The court then correctly concluded that because Testa, as the applicant, "did not own a qualifying driveway or any undeveloped land in the area depicted on the plans, § 6.8.3 simply did not apply to this case."

### III

The plaintiffs Dana Evans and David Evans[10] next argue that the commission failed to follow the statutory requirements of § 22a-19 by not considering feasible and prudent alternatives to the proposed application. The plaintiffs claim that once they had established that the proposed application reasonably was likely to impair or to destroy the public trust in natural resources, specifically, resident species of animals, the commission was required to consider feasible and pru-

---

[10] See footnote 5.

dent alternatives to that harm. The defendants counter that § 22a-19 requires the consideration of alternatives only if the proposed project involves conduct reasonably likely to cause *unreasonable* impairment to a natural resource. The defendants further contend that the record contains substantial evidence to support the commission's implied finding that the applications did not involve conduct that reasonably was likely to have an unreasonable effect on any species. We agree with the defendants.

We again begin by setting forth the appropriate standard of review. Because statutory construction is a question of law, our review is plenary. See *State* v. *Marro*, 68 Conn. App. 849, 855, 795 A.2d 555 (2002). We conduct our review of the plaintiffs' claim, however, mindful that we do not write on a clean slate. In *Paige* v. *Town Plan & Zoning Commission*, 235 Conn. 448, 668 A.2d 340 (1995), our Supreme Court discussed when zoning commissions are required to consider alternatives pursuant to § 22a-19 (b). In *Paige*, the Supreme Court stated that "[b]y its plain terms, General Statutes § 22a-19 (b) requires the consideration of alternative plans *only* where the commission first determines that it is *reasonably likely* that the project would cause *unreasonable pollution, impairment or destruction* of the *public trust* in the natural resource at issue. . . . In view of the factors and standards that govern the determination in each case, any fear that a broad definition will cause alternative plans to be required in virtually every case is plainly unwarranted." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Paige* v. *Town Plan & Zoning Commission*, supra, 462–63; see also *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 736 n.33, 780 A.2d 1 (2001). The court, therefore, properly held that the dispositive issue was whether the proposal would cause unreasonable impairment of natural

resources so as to require the commission to consider alternatives. We agree with the court that once the commission made no finding of unreasonable impairment of natural resources, it no longer had an obligation to consider alternative plans.

We next consider whether the court properly found that substantial evidence existed that the subdivision would not cause an unreasonable impairment to natural resources. "In appeals from administrative zoning decisions, the commission's conclusions will be invalidated only if they are not supported by substantial evidence in the record. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The [commission's] decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence . . . to support any such reason [however] must be substantial . . . ." (Citations omitted; internal quotation marks omitted.) *Heithaus* v. *Planning & Zoning Commission*, 258 Conn. 205, 221, 779 A.2d 750 (2001).

In concluding that substantial evidence existed to sustain the commission's determination, the court properly relied on a report prepared by Rema Ecological Services, LLC, concerning the presence of the timber rattlesnake and other species of wildlife in the subject area. We agree with the court that the report, which was submitted by Testa's expert, constitutes substantial evidence to support the commission's decision that Testa's proposal would not cause an unreasonable impairment to natural resources. The court, citing the report, stated that "it is highly unlikely that the timber rattlesnake utilizes the site. The report did find that several species, such as the rose-breasted grosbeak, the coyote and the wild turkey, do have a habitat or are found within the subject area. The report concludes, however, that 'the local diversity of wildlife species would not

be compromised by the proposal. This is greatly due to the relative low density of development and the amount of undeveloped and/or protected habitat that exists adjacent to the site.' "

On the basis of our review of the record, we conclude that the court properly found that substantial evidence existed that the proposed subdivision would not unreasonably impair natural resources.

The judgment is affirmed.

In this opinion the other judges concurred.