[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON DEFENDANT'S MOTION TO DISMISS
The following facts are relevant to the motion presently before the court and are not in dispute. The plaintiffs, Jordan Properties, LLC and Jandim Realty Co., Inc. (collectively, Jordan), appeal from the decision of the defendant, Old Saybrook Zoning Commission (commission), to approve Jordan's affordable housing application with restrictions. Jandim Realty Co., Inc. is the owner of certain undeveloped real property, consisting of approximately 12 acres in the town of Old Saybrook, Connecticut (premises). Jordan Properties, LLC is the contract purchaser of the premises and the applicant. The application, filed on September 18, 2000, was for site plan approval of a proposed multi-family housing development in the town of Old Saybrook. On December 4, 2000, the commission approved the site plan application but imposed sixteen restrictions. The restrictions pertained to various aspects of construction including the materials to be utilized, noise attenuation issues, off-site conditions and a 48-unit reduction in the size of the development from 216 units to 168 units. Jordan submitted a proposed modification of its application to the commission on December 26, 2000, which, among other changes, reduced the number of units to 204. On February 7, 2001, the commission rejected the modified application and affirmed the restrictions previously imposed.
On March 1, 2001, Jordan commenced an appeal pursuant to General Statutes § 8-30g, the Affordable Housing Land Use Appeals Act (the act)[1] in the Superior Court, judicial district of Middlesex at Middletown. On June 11, 2001, this appeal was transferred to the Superior Court, judicial district of New Britain, tax and administrative appeals session. The matter was subsequently assigned to this court which heard the parties on the issue of aggrievement on October 1, 2002.
At the October 1, 2002 hearing, after Jordan presented evidence of its aggrievement and before the commission commenced its case, the commission moved to dismiss the appeal on the ground that Jordan lacks standing to bring the appeal. This court allowed both parties to file memoranda on CT Page 3153 the issue.[2]
 DISCUSSION
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) Blumenthal v. Barnes, 261 Conn. 434, 442, 802 A.2d 844 (2002). "A motion to dismiss shall be used to assert lack of jurisdiction over the subject matter . . ." Kizis v. Morse Diesel International, Inc.,260 Conn. 46, 51, 794 A.2d 498 (2002).
The commission moves to dismiss the appeal on two grounds: (1) that Jordan's application indicates that the affordable housing development is located in an industrial zone, thereby preventing Jordan from appealing pursuant to the act, and (2) that the evidence submitted by Jordan in support of aggrievement is not relevant and cannot be considered by this court.
Industrial Zone Exemption
The commission moves to dismiss Jordan's appeal on the ground that the application showed that the affordable housing development would be located in an industrial zone where no residential uses were permitted and that "General Statutes § 8-30g (g) (2) (A) specifically excludes those areas from consideration for affordable housing purposes." The commission argues that "due to the restrictions [of § 8-30g (g)] on the use of the zone . . . the application did not qualify [as affordable housing] and should not be treated as such by the Court." (Emphasis in original.)[3]
Jordan counters that whether the application sought to place affordable housing in an industrial zone does not implicate the subject matter jurisdiction of this court. Jordan argues that § 8-30g (g) (2) (A), known as the industrial zone exemption, implicates only the commission's burden of proof, after the court has found Jordan to be aggrieved.
Section 8-30g (g) states, in its entirety: "Upon an appeal taken under subsection (f) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. The commission shall also have the burden to prove, based CT Page 3154 upon the evidence in the record compiled before such commission, that, (1) (A) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (B) such public interests clearly outweigh the need for affordable housing; and (C) such public interests cannot be protected by reasonable changes to the affordable housing development, or (2) (A) the application which was the subject of the decision from which such appeal was taken would locate affordable housing in an area which is zoned for industrial use and which does not permit residential uses, and (B) the development is not assisted housing, as defined in subsection (a) of this section. If the commission does not satisfy the burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it." (Emphasis added.)
The commission misconstrues § 8-30g (g). This statutory provision does not, as the commission asserts, implicate the jurisdiction of the court to hear a particular appeal, it merely sets forth the commission's burden of proof. The language of this section reveals alternate burdens of proof for appeals brought pursuant to the act. Under either alternative, the burden is on the commission to first show that the "reasons cited for such decision are supported by sufficient evidence in the record." Second, "[t]he commission shall also have the burden toprove" one of two things: either that its decision satisfies the three-pronged test set forth in parts (1) (A), (B) and (C) or that the application meets the two pronged test set forth in parts (2) (A) and (B).
Other provisions of the statute cast doubt on the commission's interpretation of § 8-30g (g) (1) and (2). In § 8-30g (k) and (l), the act specifically enumerates situations to which the affordable housing appeals procedure is not applicable.[4] Had the legislature intended to exempt applications that fall under the industrial zone exemption from the affordable housing appeals procedure, it would have expressly done so, as it did in subsections (k) and (l). It is an elementary rule of statutory construction that "[i]n determining the meaning of a statute, [it] must be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation." (Internal quotation marks omitted.) Cannata v.Department of Environmental Protection, 239 Conn. 124, 143, 680 A.2d 1329
(1996); see also, Evans v. Planning Zoning Commission,73 Conn. App. 647, 651-52, 808 A.2d 1151 (2002). "[I]n construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." (Internal quotation marks omitted.) Nizzardo v. State Traffic Commission, 259 Conn. 131, 164, CT Page 3155788 A.2d 1158 (2002).
Moreover, the industrial zone exemption contained in § 8-30g (g), formerly § 8-30g (c), has been the subject of appeals, both at the trial and appellate levels, where it has been analyzed on the merits. These courts have considered the industrial zone exemption as encompassing burdens of proof, rather than implicating the jurisdiction of the court. See, e.g., JPI Partners, Inc. v. Planning ZoningBoard, 259 Conn. 675, 791 A.2d 552 (2002); North Haven Opportunity AffordHousing v. North Haven PZC, Superior Court, judicial district of New Britain, Docket No. CV 98 0492231 (February 5, 1999, Munro, J.).
It is the conclusion of this court, therefore, that even if the application sought to place the housing in an industrial zone, such circumstance does not affect the jurisdiction of this court to entertain Jordan's appeal.[5] Section 8-30g (g) pertains to the burdens of proof of the parties to an affordable housing appeal and not to the jurisdiction of the court to consider the appeal.
Evidence in Support of Aggrievement
The commission further moves to dismiss Jordan's appeal on the ground that Jordan is unable to establish aggrievement. Specifically, the commission argues that Jordan has provided no evidence concerning the fiscal impact of the restrictions on a rental development, the type of affordable housing the commission asserts was specifically applied for and, instead, submitted evidence of the fiscal impact of the restrictions on the revenue from the sale of units in the development. The commission argues that this evidence shouldn't be considered by the court and, as such, Jordan is unable to establish aggrievement.
"[I]n order to have standing to bring an administrative appeal, a person must be aggrieved." (Internal quotation marks omitted.) Harris v.Zoning Commission, 259 Conn. 402, 409, 788 A.2d 1239 (2002). "A person does not become aggrieved until the zoning authority has acted, and the question of aggrievement is a jurisdictional one for the court. To be entitled to an appeal, the plaintiff[s] [were] required to allege and prove that [they were] aggrieved by the decision of the commission." (Internal quotation marks omitted.) Quarry Knoll II Corp. v. Planning andZoning Commission, 256 Conn. 674, 702, 780 A.2d 1 (2001). "The fundamental test by which the status of aggrievement . . . is determined encompasses a well-settled twofold determination. First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all CT Page 3156 members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) Id. "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." Id., 702 "Aggrievement presents a question of fact for the trial court and the party alleging aggrievement bears the burden of proving it." Harris v. Zoning Commission, supra, 410.
The commission maintains that Jordan's aggrievement must be determined in the context of the development as a rental property. In support of this argument, the commission refers to portions of the record that the commission maintains clarifies the exact nature of the application. The commission argues that, during the application process, Jordan presented evidence exclusively regarding rental property and that when the commission evaluated the viability of the development, it did so based on the project's categorization as a rental development. The commission maintains that at the hearing on aggrievement before this court the "[p]laintiff's claim of aggrievement was that the conditions adversely impacted the development when evaluated as a sales development and that the units would not sell for prices sufficient to cover the costs alleged. The Plaintiffs offered no testimony, either on the record or before the Court, concerning projected rental income." The commission concludes, therefore, that because "[t]he Plaintiffs have relied at the aggrievement hearing exclusively on evidence not before the Commission and on a theory of revenue — sale of the units — completely contrary to four months of hearings on the application," Jordan is unable to satisfy its burden of establishing facts which support a finding that they are aggrieved by the commission's action.
Jordan counters that the evidence it submitted is probative of aggrievement and that it should be considered by this court. Specifically, Jordan argues that the evidence submitted at the hearing demonstrates that "the restrictions significantly reduce the number of units, whether rented or sold, without a proportionate reduction in development costs and, additionally, add significant costs to the project." Jordan argues that "[t]he form of final ownership of [the units] is irrelevant to the question whether or not the restrictions imposed by the Commission have a substantial adverse impact on the proposal's viability or on the affordability of the affordable units." Jordan concludes, therefore, that the evidence submitted is probative of its aggrievement and is properly before the court.
At the outset, it is important to underscore the limited scope of the CT Page 3157 aggrievement issue currently before the court. In ruling on the present motion, this court is not determining the issue of aggrievement itself, that is, whether the evidence submitted sufficiently establishes Jordan to be an aggrieved party such that it can proceed with this appeal. Rather, this court is merely deciding whether the evidence Jordan submitted in support of its aggrievement is probative and can be considered by this court when it determines aggrievement at a future hearing.
The evidence submitted by Jordan at the October 1, 2002 hearing included a "pro forma" analyzing the financial impact of the restrictions imposed by the commission compiled by David Mack, president of Jandem Real Estate Co., in collaboration with several real estate professionals. This "pro forma" analyzed the projected construction costs of implementing all sixteen restrictions imposed by the commission under three separate scenarios: Jordan's original application for 216 units, its revised application for 204 units and the 168 units approved by the commission in its restricted approval. Using the figure on projected construction costs, the "pro forma" calculated, for each of the three scenarios, the projected profit return and revealed that the costs of implementing the sixteen restrictions would be substantial and that, as the number of units decreased, there would be only a nominal decrease in the per unit construction costs.
The "pro forma" demonstrates the relationship between increased construction costs, fewer units, and the amount of the developer's profit. Whether the revenue stream is from the rental of units or the sale of units, it is the cost of implementing the restrictions combined with the reduction of the units that is a key element in the analysis of whether there is a possibility that Jordan will lose money and whether there is a possibility that the restrictions will "have a substantial adverse impact on the viability of the affordable housing development" — and how.
It is the conclusion of this court, therefore, that the evidence submitted by Jordan in support of aggrievement is probative of aggrievement and is sufficient to withstand a motion to dismiss.
The commission's motion to dismiss is denied.
The court will now proceed with a hearing to afford the commission an opportunity to present its evidence on aggrievement.
Tanzer, J. CT Page 3158